```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                    CENTRAL DIVISION AT LEXINGTON


 3
                              - - -
 4   UNITED STATES OF AMERICA,     .   Case No. 5:20-CR-00032
                                   .
 5           Plaintiff,            .
                                   .   Lexington, Kentucky
 6        - v -                    .
                                   .   Wednesday, October 9, 2020
 7   JAVANTEZ L. MASTERS,          .   8:59 a.m.
                                   .
 8           Defendant.            .
                              - - -
 9
                  TRANSCRIPT OF SENTENCING PROCEEDINGS
10               BEFORE THE HONORABLE DANNY C. REEVES
                  UNITED STATES DISTRICT COURT JUDGE
11
                              - - -
12

13   For the United States:      FRANCISCO VILLALOBOS, ESQ.
                                  Assistant U.S. Attorney
14                                United States Attorney's Office
                                  260 West Vine Street, Suite 300
15                                Lexington, Kentucky  40507

16   For the Defendant:          RACHEL DIANE YAVELAK, ESQ.
                                  Oeltgen & D'Ambruoso, PLLC
17                                120 North Mill, Suite 300
                                  Lexington, Kentucky  40507
18
     Court Reporter:             LINDA S. MULLEN, RDR, CRR
19                                Official Court Reporter
                                  101 Barr Street
20                                Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25
```

1  (Proceedings in open court, October 9, 2020, 8:59 a.m.)

2      THE COURT:  Thank you.

3      Madam Clerk, would you call the matter scheduled for 9:00,

4  please.

5      THE CLERK:  Yes, Your Honor.  Lexington Criminal Action

6  Number 20-CR-32, United States of America versus Javantez L.

7  Masters, called for sentencing.

8      THE COURT:  All right.  Thank you.

9      Would counsel please state their appearances.

10      Mr. Villalobos, good morning.

11      MR VILLALOBOS:  Good morning, Your Honor.  Paco Villalobos

12  on behalf of the United States.

13      THE COURT:  Ms. Yavelak, good morning.

14      MS. YAVELAK:  Good morning, Your Honor.  Rachel Yavelak

15  for Javantez Masters, who is here beside me.

16      THE COURT:  Thank you.

17      This matter is scheduled for a sentencing hearing this

18  morning.  Before we proceed with the hearing, let me first

19  confirm that Mr. Masters has had the opportunity to review his

20  presentence report and also to discuss the report with his

21  attorney to his satisfaction; is that correct?

22      THE DEFENDANT:  Yes, sir, Your Honor.

23      THE COURT:  All right.

24      Mr. Masters, your presentence report will be filed in the

25  record under seal pursuant to Rule 32 of the Federal Rules of

1    Criminal Procedure.  The report's available to the parties but

2    it's not available for the public to review.

3        There are no objections to the presentence report and

4    therefore I will adopt the findings that are contained in the

5    report, as well as the guideline calculations, which I will

6    review with the parties in just a moment.

7        Before I do that, let me remind counsel, if there are any

8    additional factors that you would like to call to my attention

9    that are relevant to sentencing under Title 18, Section 3553,

10   please do so during allocution in the case.

11       And I'll also note the defendant has filed a motion for a

12   variance under 3553(a)(2), and we'll take that up.  Parties may

13   argue their positions during allocution in the case.

14       Turning to the presentence report and the guideline

15   calculations contained in the report, the defendant entered a

16   plea to three counts.  There are no counts to be dismissed in

17   the case.

18       Count 1 charges possession with intent to distribute

19   marijuana.

20       Count 2, possession of a firearm in furtherance of a drug

21   trafficking crime.  That carries a mandatory minimum term of

22   not less than five years consecutive to the penalty imposed for

23   Counts 1 and 3.

24       And then Count 3 is felon in possession of a firearm.

25       The guidelines begin -- the calculations begin at

1  paragraph 22.  The 2018 edition of the guidelines manual is

2  used to perform these calculations.

3  Count 1 and 3 are grouped together under Section 3D1.1 of

4  the guidelines.  And for that grouping, the base offense level

5  for Count 1 would be 14.  Count 3 would be base offense level

6  of 22.  So we then would use the higher of those two offense

7  levels.

8  There's a two-level increase as reflected in paragraph 31

9  because the number of firearms involved was between three and

10  seven.  And that results in an adjusted offense level of 24.

11  Count 2, as indicated, has a mandatory minimum term of

12  five years by statute, and that's to run consecutive.

13  The defendant also receives a three-point reduction in the

14  presentence report for acceptance of responsibility.

15  Before the Court may apply the third level of acceptance

16  credit, it does require a motion from the United States.

17  Mr. Villalobos.

18  MR VILLALOBOS:  Yes, Your Honor.  We will make that motion

19  at this time for the third level of acceptance.

20  THE COURT:  All right.  Applying a third level of

21  acceptance credit reduces the total offense level in the case

22  to 21.  I do sustain the government's motion with regard to the

23  offense level reduction.

24  Information regarding the defendant's criminal history is

25  contained in the report in part B.

1          And as set forth in paragraph 50, he has three criminal

2    history points.   That would place him in Criminal History

3    Category II for purposes of calculating the guideline range in

4    the case.

5          The guideline range for Counts 1 and 3, which have been

6    grouped, would be a range of 41 to 51 months.

7          And Count 2 carries a 60-month consecutive minimum to any

8    sentence imposed for Count 1 and 3.   And that is reflected in

9    paragraph 82 of the presentence report.

10          The terms for supervised release under the guidelines

11    would be, for Count 1, would be four years.   That's the minimum

12    period for that count.

13          Count 2 would be two to five years.   And the maximum term

14    would be five years.

15          And Count 3 would be one to three years, with three years

16    being the maximum period of supervision for that count.

17          The fine range in this case is set forth in paragraph 92.

18    The fine range, of course, is calculated according to the base

19    offense level in the matter.   And the fine range in this case

20    would be a range of 20,000 to $200,000.

21          And again, those are the relevant calculations that have

22    been adopted in this matter.

23          Before we proceed with allocution in the case, let me

24    confirm that there are no motions to be taken up by either

25    party; is that correct, Mr. Villalobos, on behalf of the

1    government?

2         MR VILLALOBOS:  Yes, Your Honor.

3         THE COURT:  Ms. Yavelak, other than your motion for a

4    variance, are there any other motions to be taken up?

5         MS. YAVELAK:  No, Your Honor.  Thank you.

6         THE COURT:  All right.  Thank you.  If no other motions

7    are to be addressed, then we will proceed with allocution in

8    the case.

9         Ms. Yavelak, I'll hear from you and also, of course, from

10   Mr. Masters if he would like to address the Court.

11        MS. YAVELAK:  Thank you, Your Honor.

12        Judge, I think the PSI and the sentencing memorandum I

13   filed say quite a bit of what my position is.  I won't

14   reiterate because I know the Court has read it.

15        He has family and friends here.  I think the Court can see

16   from the letters he does have significant support.

17        He is young.  And for him to be in this situation at a

18   young age is obviously not good.  But I think it's also acted

19   as a wake-up call.  He is well aware he is going to spend a

20   significant time in prison, but he's also already making plans

21   for his education and the future and thinking positively

22   towards that, which I think is -- it's not something I always

23   see.  I mean, a lot of people will think about it but not

24   actually see how they may actually put it into play.

25        Obviously, it's a serious crime involving the marijuana

1    with the guns.  And the Court can see from the PSI that he had

2    been shot a couple of years ago, had been hospitalized based on

3    that.

4         I think the Court also would have seen the fact that he

5    had been placed at The Ridge for some mental health issues.  I

6    don't believe from my dealings with him and his family that he

7    is a lost cause.  I do get concerned about being exposed to

8    people that are more criminally sophisticated in prison than he

9    is.

10        I think he has a shot and the intelligence to make it and

11   to follow this Court's rules.  Obviously, the month and a half

12   prior to this new offense he was on probation is not the most

13   indicative of that.  But I think this has been a massive

14   wake-up call with him.  When you're facing time that you're

15   actually going to serve in federal court, I think that makes

16   you look at your life a lot more than obviously being probated

17   in state court.  Obviously he's still looking at time on his

18   probation revocation in state court.

19        He has requested drug treatment, I would ask the Court to

20   recommend RDAP as well as be placed as close to home as

21   possible.

22        I would ask the Court also to recommend a mental

23   evaluation to deal with some of the issues that have obviously

24   occurred to him.  It may give him some of the tools to handle

25   those.

1   Clearly we have a young man that got caught up in the

2  trappings, he slightly started to get himself out.  Obviously

3  did not get himself out completely and sort of got himself in a

4  worse situation than he had originally.

5    But I would ask the Court to take into account the

6  letters, everything that's in the memo and the PSI, and vary

7  slightly from the guidelines to 36 on the group counts.

8    I would ask the Court for five years on the 924(c) charge.

9    I would ask the Court for the five years of supervised

10  release.

11    In lieu of a fine, I would ask for community service.

12    A couple of things we talked about considering some of the

13  opportunities he had, is I think he might be a good person to

14  talk to younger African American males when he gets out.  If

15  this is the left turn you take, this is what you're facing.  I

16  was 21 when I went in and this is a part of my life that I

17  lost.

18    So I would ask the Court to take that all into account.

19  Thank you.

20    THE COURT:  All right.  Ms. Yavelak, I do have some

21  questions for you about some of the information contained in

22  your motion for a variance.

23    MS. YAVELAK:  Yes, Your Honor.

24    THE COURT:  And specifically, and I've looked at all of

25  these arguments in your motion.  And you state at page 3 of

1   your memo, the Recidivism and Federal Sentencing Policy

2   indicates that a criminal history category II has only a

3   23.9 percent of repeating.

4       Now, there's no citation for your authority.  And your

5   citation here or the argument is completely contrary to all

6   recent information about recidivism in criminal history

7   categories.

8       So I would like to find out from you, number one, where

9   this information comes from, and then I want to talk with you

10  about some other recidivism information that's been published

11  by the Sentencing Commission.

12      MS. YAVELAK:  Judge, I got it from the USSG website,

13  Recidivism and Federal Sentencing Policy.  The article which I

14  had here, obviously --

15      THE COURT:  What's the date, date of the publication?

16  I've never heard of that publication, I don't know what you're

17  citing.

18      MS. YAVELAK:  It was one of the reports at a glance, they

19  had posted on it.

20      THE COURT:  From the Sentencing Commission?

21      MS. YAVELAK:  It was on their website, yes, Your Honor.

22  I'm happy to give the article to Your Honor.

23      THE COURT:  You can pass it up.  Let me go over some

24  statistical information with you, because none of the

25  information really -- none of the information contained in a

1    2016 report supports that number in any shape, manner or

2    fashion.

3        So let me go through some numbers with you in terms of

4    either offense characteristics, age, criminal history category.

5    And the information that I have is from the March 2016 report

6    published by the Sentencing Commission, and the report, in

7    summary, discusses how age and criminal history are important

8    factors in addressing issues of recidivism.

9        For example, as a person has an increased number of

10   criminal history points, the likelihood of recidivism increases

11   with one exception.  There's a little dip between two points

12   and three points.  A person that has three points actually has

13   a little lower risk of recidivism than a person with two

14   points.  It drops from 56 percent with two points, to 57 --

15   52.7 percent if you have three points.  That's nearly double

16   the number that you've cited -- well, not quite double, the

17   number you cited.

18       When we look at criminal history category, category II,

19   likelihood of recidivism 54.3 percent.

20       If we look at a person that has a final offense level of

21   21, for example, 52.7 percent, that's the second highest of

22   the -- when we look at only final offense levels.

23       If you look at federal offense types, persons charged with

24   a firearms offense, likelihood of recidivism, 68.3 percent.

25   Highest percentage of the groups that were considered.

1        Specific offense characteristics, a person charged with a

2   weapon enhancement under 924, 55.4 percent, as opposed to those

3   that do not have that enhancement, it's 48.6 percent.

4        If we look at length of the federal sentence imposed, the

5   likelihood of recidivism.  A person that's received five to

6   nine years would be 55.5 percent chance of recidivism, the

7   highest of all of those categories studied.

8        If we looked at age, either at the time of conviction or

9   the time of release, a person that's sentenced between 21 and

10  25 years of age has a 65.6 percent of recidivism.

11       And at the time of release, between 26 and 30 years, has a

12  62.2 percent chance of recidivism.

13       We see from the study that the younger a person is, either

14  at the time of sentencing or at the time of release, they have

15  a higher likelihood of recidivism.

16       If we look at other characteristics, demographic

17  characteristics in terms of gender, race, ethnicity,

18  educational levels, none of those categories would support the

19  number that you've cited.  None.

20       MS. YAVELAK:  Your Honor, if I may?

21       THE COURT:  Yes, ma'am.

22       MS. YAVELAK:  I should have used the reincarceration rate.

23       THE COURT:  I can't hear with your mask.  I'm sorry.

24       MS. YAVELAK:  I'm sorry, Judge.  I should have used the

25  reincarceration rate, and I apologize for that.  I was looking

1   at the recidivism study.  The number the Court said about

2   recidivism on rearrest, that is the same number that I see.

3   The reincarceration rate is 23.9.  That is my mistake and I

4   apologize to the Court.

5        THE COURT:  These numbers I've just cited are actually

6   understated.  When you look at the definition of recidivism

7   that's used in the study, for example, that would not include

8   persons that commit offenses but are not arrested or

9   reincarcerated.

10       A person that has, let's say, a C violation and there's no

11  action taken by the Court on that, even though they have

12  admitted that conduct, that would not be included in those

13  numbers.

14       MS. YAVELAK:  You're correct, Your Honor.

15       THE COURT:  So your number is not correct.

16       MS. YAVELAK:  That is what --

17       THE COURT:  In fact, this defendant's characteristics

18  would indicate that he has a high likelihood of recidivism.

19       MS. YAVELAK:  Youth does lead to a higher recidivism.  It

20  does tend to decrease as one ages, yes, Your Honor.

21       THE COURT:  All right.  Thank you.

22       MS. YAVELAK:  Thank you.

23       THE COURT:  Mr. Masters, would you like to add anything to

24  what your attorney has said on your behalf?

25       THE DEFENDANT:  Yes, sir, Your Honor.

1        Your Honor, when I was arrested at 20 years old, I had

2   never experienced jail.  Coming into this situation, I can say

3   that I wasn't as mature as I am today.  I did not realize the

4   full consequences that my actions held.

5        Since being here, I've reevaluated my priorities.  I used

6   to put the street before my family, friends and mostly myself.

7   Now my main priorities are my family, God, my future and my

8   freedom.  Overall, I want to be a positive, productive citizen

9   in any community.

10       It wasn't just the money or the marijuana, but the

11  lifestyle and attention that was so addicting.  What started as

12  a means to support my own habit became greater than what I

13  intended.

14       I won't make excuses.  I take full responsibility for the

15  charges at hand.  I just want you to know that I'm not a bad

16  person.  I've never been involved in a gang, never had a

17  serious or violent charge prior to this one.  I'm involved in

18  the community.  I have a family that loves me and holds me

19  responsible for my actions.

20       Before coming here, I started my own business and had

21  hopes of creating my own brand.  I was in a process of

22  enrolling in the University of Kentucky with intentions of

23  studying business management.  I have real goals and ambitions.

24  I made a mistake that I deeply regret and feel very remorseful

25  about.

1       Since I've been incarcerated, I became close to my family

2   and people who have my best interest in mind.  Most

3   importantly, God.  I plan on using my sentence to better myself

4   by taking classes that will help push me in a better direction.

5   I would like to complete the HVAC and electricity programs, as

6   well as get treatment for my substance abuse issues.

7       I would like to work on regaining trust, integrity and my

8   identity, who I am as a man in this world is my primary focus.

9       I would like to extend my gratitude to you as my judge and

10  thank you for your time on my behalf.

11      THE COURT:  Well, Mr. Masters, you indicated that before

12  this case you hadn't had any position charges.  But I'm looking

13  at your presentence report and you were charged with a very

14  similar offense in 2018 and were sentenced in August of 2019,

15  around the time that the activity charged in this case

16  occurred.

17      And did you not consider that to be a serious charge

18  before this one?

19      THE DEFENDANT:  Yes, Your Honor.  Any charge is a serious

20  charge.  I don't want to downplay it like it wasn't.  But -- I

21  would say it was a serious charge.

22      THE COURT:  Well, it involved possession of marijuana and

23  also possession of a firearm.  Very similar to the charges

24  here.

25      THE DEFENDANT:  Yes, sir.

1      THE COURT:  That wasn't a wake-up call for you there

2  because the state court basically gave you a suspended

3  sentence?

4      THE DEFENDANT:  I would agree.

5      THE COURT:  All right.  Thank you.

6      Mr. Villalobos.

7      MR VILLALOBOS:  Thank you, Your Honor.  I too have read

8  through the motion filed by defense and also listened to

9  Mr. Masters speak.  And I think certainly the things that have

10  been brought before the Court, other than the recidivism rate,

11  should certainly be taken into consideration.  But I think it

12  can be considered within the calculated guideline range of that

13  41 to 51 months, as opposed to granting that downward variance.

14      I know the recidivism statistics also.  I think

15  Ms. Rieker, who handled the case, brought that to my attention.

16  And I'm glad the Court has discussed that so I won't go into

17  too much more detail.  But I think the youth and other

18  characteristics contribute to that probability of recidivism.

19  I think we see that within the criminal history that's already

20  before the PSR.

21      I think a time line is important when we look at those

22  history and characteristics of the defendant.  I note that in

23  the PSR on the factual count of this case, the tips regarding

24  activity came in June of 2019, which was before he actually had

25  been convicted of the state offense, which --

1    THE COURT:  Before he was sentenced.  He had been charged,

2  but he hadn't been sentenced.

3    MR VILLALOBOS:  He had been charged and likely had pled

4  guilty.  If I understand from my state experience, he likely

5  pled guilty to the trafficking charge at that point and was

6  awaiting sentencing when the tips came in for this particular

7  case.

8    Then he gets sentenced in August of 2019.  And within a

9  month, they do another search warrant at the house and we have

10  the same offense all over again.

11    One thing that I think needs to be spoken of is that we

12  discussed about the lack of leniency or the leniency from the

13  state court and what effect it's had on it.  From my reading of

14  it, it doesn't look like the leniency of the state court really

15  had any effect because the conduct doesn't appear to have

16  ended.

17    The charge of being arrested in the 2018 case didn't seem

18  to have any effect because the behavior kept going on and on.

19  And obviously we're here today.

20    Additionally, when you look at that state offense, he was

21  arrested with firearms and wasn't charged or convicted of an

22  enhancement with the firearm offense, which is what he's done

23  in this particular case.

24    So I think when you look at that history and you look at

25  not only the failure to adhere to what are likely bond

1   conditions he had in state court, the probation condition that

2   he had as well, I think that a sentence within the guideline

3   range would better reflect the serious nature of the offense,

4   would better promote respect for the law.  And I think it would

5   afford better and more adequate deterrence than what happened

6   in the state case for the similar offense.

7       And so when we look at the -- at those factors in 3553(a),

8   I believe that a sentence within the calculated guideline range

9   in the PSR is more appropriate than a downward variance as

10  suggested by defense counsel.  And so taking that into

11  consideration, that's what the United States' position would be

12  in this sentence.

13      THE COURT:  All right.  Thank you.

14      Ms. Yavelak, any additional response you would like to

15  make?

16      MS. YAVELAK:  One thing I would say is -- I don't disagree

17  with the charge and being on probation, I don't think that hit

18  him.  He's been incarcerated now, I believe, since October of

19  '19.  I think that has had an effect, granted it was part on

20  the probation violation and it's also on the writ in this case,

21  but I think he now is taking things way more seriously than he

22  had in the past and I would ask the Court to consider that.

23      THE COURT:  All right.  Yes, ma'am.

24      In determining an appropriate penalty for admitted

25  violations of federal law, I do begin my analysis on the

1    properly calculated guideline range.

2         In this particular case, we do have one charge that has a

3    mandatory minimum term of 60 months, which will be consecutive

4    for the penalty to be imposed for Count 1 and 3.  That's

5    required by statute, but it's also appropriate under the facts

6    of this particular case.

7         I also consider all of the statements made by the parties

8    today as well as those written materials that are filed.   In

9    this particular case, the defendant has filed a motion for the

10   Court to consider a variance below the guideline range, below

11   the 41- to 51-month range under the factors of 3553.

12        Now, those factors include the nature and circumstances of

13   the offense, as well as the history and characteristics of the

14   defendant, the need for the sentence to reflect the seriousness

15   of the offense, need to promote respect for the law and provide

16   a just punishment for the offense.

17        Of course, the Court considers the deterrent effect that

18   the sentence would have, and the need to protect the public

19   from any future crimes of the defendant.  That's one of the

20   reasons we do talk about deterrence somewhat in these

21   proceedings.

22        But I also consider rehabilitative issues, factors to be

23   taken into account.  Some of those have been mentioned and

24   some, of course, I believe are appropriate and I'll be

25   addressing those in just a moment.

1        I also consider the need for the sentence to avoid

2   unwarranted sentencing disparities among defendants with

3   similar records who have been found guilty of similar conduct.

4        And in making that analysis, in looking at the memorandum

5   that has been filed in support of a downward variance, I don't

6   find that any of the grounds stated either orally or in the

7   sentencing memo would support a downward variance from the

8   guideline range.

9        It is true that the defendant did take responsibility for

10   his actions when law enforcement was at his home, but he's been

11   given credit in the guideline calculation for acceptance of

12   responsibility.

13        It also appears to be true that obviously he's young, and

14   it does appear that he's been a hard worker.  But he hasn't

15   turned his attention, his work activities to legitimate

16   activities.

17        And as I indicated through some of my questions with

18   counsel, while the defendant is young, that's not necessarily a

19   mitigating factor when we look at statistical information about

20   the likelihood of committing future offenses, and therefore

21   endangering the public in doing so.

22        As noted, statistical information would indicate that the

23   younger a person is, either at the time of sentencing or at the

24   time of release, the greater likelihood that that person will

25   commit other offenses.  I do think that the median time for

1    commission of an offense is about 21 months after release from

2    a period of incarceration.

3         But as I've indicated, there are a number of factors that

4    would not indicate that there's a lower likelihood of

5    recidivism for this defendant's characteristics, either in

6    terms of the type of offense or any other factors that I have

7    mentioned.

8         Likewise, other information from the Sentencing Commission

9    would indicate that longer sentences sometimes will provide

10   greater deterrent effect.  And I'll cite the parties to a

11   recent study from April of this year, Length of Incarceration

12   and Recidivism, focuses on a number of study groups and

13   concludes that in a couple of circumstances, sentences of

14   60 months or longer, or 120 months or longer, do provide a

15   greater deterrent effect than lesser sentences for the same

16   conduct.

17        That would tend to be borne out here.  Although based on

18   different facts in this particular case, the defendant was

19   sentenced for what would be a somewhat similar charge, drugs

20   and a firearm, in the state proceeding, charged in that state

21   proceeding, but that did not deter continuing criminal conduct.

22        And perhaps the defendant has received a wake-up call,

23   time will tell whether that's the case.  But the Court does not

24   place a large amount of stock in representations made that

25   things will change going forward.

1    There's other references to the defendant's history and

2  activities that have happened in his past that have been

3  characterized as traumatic events, that very well could be.

4  Again, the Court will look at issues of rehabilitation during

5  the period of incarceration.

6    While I will recommend the RDAP program for the defendant,

7  that will be a final decision for the Bureau of Prisons to make

8  as to whether he should be placed in that particular program,

9  but I will recommend drug treatment.

10    The Bureau of Prisons will also be able to make a

11  determination as to whether a mental health evaluation and

12  treatment would be appropriate here.  And I'll leave that to

13  the Bureau of Prisons to make that decision as to any mental

14  health evaluation and any necessary treatment.

15    As indicated, also in looking at the sentencing memo, the

16  information that is cited in terms of recidivism rates is

17  incorrect listed in the motion at page 3.

18    While the defendant does have a high school education and

19  certainly is intelligent, the fact that he's graduated from

20  high school would not be a reason for the Court to vary

21  downward from the guideline range.

22    He also has family support as reflected by the letters

23  attached, but that to this point has not prevented him from

24  engaging in very serious criminal conduct.  And one could argue

25  that while he does have family support and support from

1    friends, one could argue, although I'm not concluding this, but

2    one could argue he's also involving other individuals in his

3    drug trafficking activities.  I'm not going to identify the

4    individuals listed, but certainly one could draw that

5    conclusion in the information in the report.

6        It's also questionable as to whether he has been a

7    productive member of society to this point or whether any

8    support groups have had a positive influence on his life to

9    this point.

10       I will make some recommendations as to training and

11   hopefully that will provide some benefit to the defendant.  But

12   again, none of the reasons that are listed in the memorandum

13   filed on behalf of the defendant would support a variance.

14       Instead, all the information that has been provided,

15   including information that's been provided here today, would

16   indicate that a sentence at the middle of the guideline range

17   for Counts 1 and 3 would be an appropriate sentence.  It would

18   not be unduly punitive and would meet the factors of 3553.  And

19   that would run, of course, consecutive to the term that will be

20   imposed for Count 2.

21       And the Court will also direct that it be consecutive to

22   any sentence imposed by the Fayette Circuit Court in Case

23   Number 18-CR-1371.  That is separate criminal activity, and

24   this particular matter should be penalized separately and

25   should be a consecutive sentence.

1      I also consider the statements made by the defendant.

2    Hopefully he is motivated to change his lifestyle, but again,

3    time will tell as to whether he will follow through with those

4    representations that have been made today.

5      I'll announce the sentence at this time.

6      It will be the sentence of the Court pursuant to the

7    Sentencing Reform Act of 1984, as modified by the decisions in

8    *Booker* and *Fanfan*, and I do believe the following sentence

9    would be sufficient but not greater than necessary to meet the

10   purposes of Title 18, Section 3553(a):

11     And therefore it will be the judgment of the Court that

12   the defendant, Javantez Masters, will be committed to the

13   custody of the Bureau of Prisons for a term of 46 months on

14   each of Counts 1 and 3 to run concurrently, and 60 months on

15   Count 2 to run consecutively to Counts 1 and 3, to produce a

16   total term of incarceration of 106 months.

17     Now, this sentence will be consecutive to any sentence

18   imposed in the Fayette Circuit Court, Case Number 18-CR-1371.

19     As noted, I will recommend that during the term of

20   incarceration, the defendant participate in a job skills and

21   vocational training program.

22     I'll recommend to the Bureau of Prisons that the defendant

23   participate in either the RDAP program, if he qualifies, or any

24   other drug treatment program if he does not.

25     I will leave it to the Bureau of Prisons to make a

1   decision as to whether a mental health evaluation would be

2   needed and whether any mental health treatment would be

3   appropriate.

4       Upon release, he will be placed upon supervision for a

5   term of four years on Counts 1 and 2, and three years on

6   Count 3 to run concurrently, for a total term of four years.

7       Within 72 hours of release from the custody of the Bureau

8   of Prisons, he must report in person to the probation office in

9   the district in which he is released.

10      While on supervision, he may not commit another federal,

11  state or local crime, and must comply with the mandatory and

12  standard conditions adopted by the Court and that will be set

13  forth in the judgment and commitment order.

14      Special conditions will include that he abstain from the

15  use of alcohol, that he refrain from obstructing or attempting

16  to obstruct or tamper in any fashion with the efficiency and

17  accuracy of any prohibited substance testing which is required

18  as a condition of release.

19      The defendant will be required to comply strictly with the

20  orders of any physician or other prescribing source with

21  respect to the use of all medications.  And he may not use or

22  consume either marijuana or marijuana products, even if that

23  controlled substance were to be prescribed to him by a

24  physician, licensed professional or other person.

25      And because this Court has recently seen an increase in

1    the number of individuals attempting to use CBD oil as a mask

2    for controlled substance use, I'll also direct that he not use

3    CBD oil or products unless approved in advance by the probation

4    office.

5        He will be required to report any theft or destruction of

6    any prescription medication to the probation office within

7    72 hours.  And he may not purchase, possess, use, distribute or

8    administer any controlled substance or paraphernalia relating

9    to controlled substances, except as prescribed by a physician.

10   And he may not frequent places where controlled substances are

11   illegally sold, used, distributed or administered.

12       I'll also include a search condition.  I believe it's

13   necessary not only based upon the nature of the offense, but

14   also to provide sufficient protection for probation officers

15   responsible for supervision of the defendant.

16       He will be required to submit his person, as well as any

17   office, properties, homes, residences, vehicles, storage units,

18   papers or computers, as well as any other electronic

19   communications or data storage devices, or any media to a

20   search conducted by the probation officer.  The failure to

21   submit to a search would be grounds for revocation, and he must

22   warn all occupants that his premises would be subject to a

23   search according to this condition.

24       I have considered the issue of a fine in the case under

25   5E1.2(d), and while I believe that this defendant does not have

1    the ability to pay a fine within the fine range, I do believe

2    that he has the ability, based upon his earning capacity, to

3    pay a lower amount of a fine.  And I have assessed $3,000 as a

4    fine in this particular case after considering all of the

5    factors in subsection (d) of that provision of the guidelines.

6        The Court notes that the fine, together with any other

7    penalty, including term of incarceration, should be

8    sufficiently punitive.  And the Court finds that a $3,000 fine,

9    together with the other penalties that have been announced,

10   would be sufficient in this particular case.

11       The defendant will be directed to pay that amount in

12   accordance with the Bureau of Prisons' Inmate Financial

13   Responsibility Program if he's not able to pay it immediately.

14   And then the Court will establish an installment payment

15   schedule if there's any balance owed upon his release from

16   incarceration.

17       I will waive community restitution in the case, but the

18   defendant will be ordered to pay the special assessment of $100

19   per count of conviction, for a total of $300, that will be due

20   immediately.

21       And the defendant will be required to forfeit to the

22   United States any interest that he might otherwise assert in

23   the items listed in the forfeiture allegation, which would

24   include sums of currency, three separate sums, first being

25   $4,340; the second, $6,600; and the third, $24,704.

1      Also, he will be required to forfeit any interest that he

2  might otherwise claim in the Glock, model 19, 9x19 caliber

3  pistol, bearing serial number ACHV239.

4      A Romarm, model Draco Micro, 7.62x39 caliber pistol,

5  bearing serial number PMD04984-17R0.

6      And an Anderson Manufacturing, model AM-15, multi caliber

7  rifle, bearing serial number 15205968.

8      And also assorted ammunition as identified in the

9  indictment in the case.

10     I will make a recommendation for placement at the request

11 of counsel.  Although I do note that under Section 601 of the

12 First Step Act of 2018, the Bureau of Prisons does have an

13 independent obligation for placement of the defendant close to

14 his residence.  But I'll also include that as a recommendation,

15 that is that he be placed at the location closest to his home

16 for which he would qualify.

17     That will be the judgment of the Court.  I believe that in

18 the plea agreement entered in the case, the defendant waived

19 the right to directly appeal the guilty plea and conviction,

20 but did not waive the right to appeal the sentence.  And,

21 therefore, in just a moment, I will ask the clerk to advise the

22 defendant of his appellate rights with respect to the sentence.

23     But at this time, I'll ask the parties to state any

24 objections that they may have, first to the sentence that has

25 been announced, and that would, of course, include conditions

1     of supervision.

2          Second would be any objections that they may have under

3     *United States versus Bostic*.   Now, under that decision from the

4     Sixth Circuit, any objections not previously raised should be

5     raised at the time so that they may be addressed by the Court

6     to be properly preserved for review on appeal.

7          Finally, if the parties would like the Court to make

8     additional findings to support the sentence and the

9     determinations that have been announced, I'll certainly do so,

10    if requested.

11         Mr. Villalobos, I'll begin with you.

12         MR VILLALOBOS:   Your Honor, no objections to the sentence.

13    No objections under *Bostic*, and no request for further

14    findings.

15         I do apologize to the Court, that I -- I must have missed

16    it, the term of supervised release after incarceration.

17         THE COURT:   Yes, sir.

18         MR VILLALOBOS:   What was that?   I'm sorry.

19         THE COURT:   It was a total of fours years.   Just a moment.

20    Four years on Counts 1 and 2, and three years on Count 3 to run

21    concurrently, to produce a total term of four years.

22         MR VILLALOBOS:   Thank you, Your Honor.

23         THE COURT:   Yes, sir.

24         Ms. Yavelak.

25         MS. YAVELAK:   Your Honor, we would object to the fine

1   based on the inability to pay, and object to the denial of the

2   motion.

3        No *Bostic* motions and no request for additional findings.

4        THE COURT:  Okay, I'll make additional findings inasmuch

5   as there's been an objection to the fine amount.

6        I had referred earlier to 5E1.2 of the sentencing

7   guidelines, subsection (d), and under that section, the

8   Court -- in determining the amount of fine, the Court considers

9   the need for the combined sentence to reflect the seriousness

10  of the offense, including any harm or loss to a victim and the

11  gain to the defendant, as well as the need to promote respect

12  for the law, to provide just punishment, and afford adequate

13  deterrence.  Now, those are -- of course, some of those are

14  3553 factors.

15       Second factor is any evidence presented of the defendant's

16  ability to pay the fine.  I've considered the information

17  outlined in the report, and while counsel is correct there's no

18  present ability, it would appear, to pay the fine, but the

19  Court also considers his ability to pay in light of earning

20  capacity and financial resources.

21       And as both counsel and the defendant have indicated, it

22  is the defendant's intention to continue his education.

23  There's been an indication in the presentence report and

24  arguments made to the Court that this defendant does have

25  business acumen and the ability to earn money going forward.

1    I also consider the burden that the fine places on the

2  defendant and his dependents relative to alternative

3  punishment, and do not find that a $3,000 fine would create an

4  undue burden either on the defendant or any relatives that he

5  has.

6    There's no dependents that are indicated in the

7  presentence report.

8    The Court also considers whether there's restitution or

9  reparation, there's none in this particular case.

10    The forfeiture amounts are the result of illegal

11  activities and not restitution.

12    The Court also considers collateral consequences of the

13  conviction.  There are no serious collateral consequences here,

14  other than the fact that the defendant will be a convicted

15  felon and it may be more difficult to obtain employment.  But

16  this defendant has shown an ability to be self-employed, if he

17  does so in a legal manner, he should be able to pay the fine.

18    I also consider whether he's been previously fined.

19    And again, I've considered the information in the

20  presentence report as well as the expected cost to the

21  government, which would include the cost of imprisonment, and

22  in this particular case the cost is substantial, as reflected

23  in the presentence report.

24    And again, as noted, the amount of the fine should always

25  be sufficient to ensure that the fine taken together with other

1   sanctions imposed is punitive in nature.

2        The guidelines also would indicate that the amount of the

3   fine, that defendant should be able to pay that within one

4   year.  And inasmuch as the defendant will be incarcerated for a

5   period of time and will be able to participate in the Bureau of

6   Prisons' Inmate Financial Responsibility Program, he should be

7   able to pay a portion while incarcerated.  And he should be

8   able to pay the balance during the first year of his release

9   pursuant to an installment payment schedule.

10       So those additional factors would support those findings,

11  would support the Court's determination as to the imposition of

12  a fine.

13       At this time, Madam Clerk, would you please advise the

14  defendant of his appellate rights.

15       THE CLERK:  Yes, Your Honor.

16       (The form entitled "Court's Advice of Right to Appeal" was

17  read aloud in open court by the clerk.)

18       THE COURT:  Thank you.

19       Mr. Masters, you're about to be handed what was read by

20  the clerk.  If you would please review your appellate rights

21  with counsel, make sure you understand those rights.  After

22  you've done so, if you could please sign that original document

23  indicating that you have received and been advised of those

24  rights.  There is also a copy that you can keep for your

25  records.

1          All right.   Thank you.

2          Are there any other issues to take up in this case at this

3    time?

4          Mr. Villalobos, anything for the government?

5          MR VILLALOBOS:   No, Your Honor.   Thank you.

6          THE COURT:   Thank you.

7          Ms. Yavelak?

8          MS. YAVELAK:   No, Your Honor.   Thank you.

9          THE COURT:   All right.   Our next hearing is scheduled for

10   10:00, this morning, we will be in recess until that time.

11          (Proceedings concluded at 9:43 a.m.)

12

13

14                  C E R T I F I C A T E

15          I, Linda S. Mullen, RDR, CRR, do hereby certify that

16   the foregoing is a correct transcript from the record of

17   proceedings in this above-entitled matter.

18

19   /s/Linda S. Mullen                December 22, 2020
     Linda S. Mullen, RDR, CRR        Date of Certification
20   Official Court Reporter

21

22

23

24

25